SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAMELA PAASO, TXSB #24060371**
Pamela.Paaso@usdoj.gov
**KATE A. ROCHAT, OSB #184324**
Kate.Rochat@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00265-AB** |
| **v.** | **GOVERNMENT'S TRIAL MEMORANDUM** |
| **TERESA VALDOVINOS-GODINEZ,** | |
| **Defendant.** | |

## I. INTRODUCTION

Defendant Teresa Valdovinos-Godinez is currently charged by Superseding Indictment

with one count of Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(a)(4). Defendant is

out of custody on pretrial release. The pretrial conference is set for January 6, 2026, and trial is

set to begin on Tuesday, January 13, 2026.  Trial is scheduled for four days.

## II. FACTUAL BACKGROUND

### A. Minor Victim 1 is placed at Morrison Mi Futuro

On August 26, 2024, Minor Victim 1 (MV1), a Honduran national, was contacted by

Department of Homeland Security Agents in Donna, Texas. Because MV1 was 16 years old and

unaccompanied, he was placed in the custody of the Office of Refugee Resettlement at Morrison

**Government's Trial Memorandum**                                                                 **Page 1**

Mi Futuro, a residential facility for unaccompanied minors in Portland, Oregon. Defendant was working as a relief milieu counselor at that facility. Defendant had close contact with the detained minors.  In that role, defendant was responsible for directing the minors through scheduled activities, accompanying them during outings and assisting them throughout their time at Morrison. Defendant was also responsible for completing internal incident reports and shift summaries that could be used for disciplinary or corrective actions.

### B.      Investigation into Reports of Abuse

MV1 was placed with a relative in Texas in mid-October 2024. Several days after he left Morrison Mi Futuro, four minors in the program approached Ali Banta, a medical coordinator, with concerns for MV1. The children reported that MV1 and defendant were in a romantic relationship, and they were worried that defendant had followed MV1 to Texas. One of the minors reported delivering notes between the MV1 and defendant. Another, who shared a room with MV1, said they saw defendant and MV1 kiss in the dorm room. The minors said that defendant and MV1 met in locations at the facility that did not have cameras. Some of the minors stated they did not report the relationship because defendant threatened them with deportation. One of the minors turned over notes that they said defendant wrote to MV1.

Banta contacted the program director and submitted an incident report. The report was initially referred to the Oregon Department of Human Services (ODHS) for investigation. ODHS sent a letter to MV1's uncle in Texas but then turned the matter over to the Health and Human Services (HHS) Office of Inspector General, because Morrison Mi Futuro is a federal program contracted with the U.S. Department of Health and Human Services.

///

///

**C.**     **Interviews with Minor Victim 1 and Minor Witness 1 (MW1)**

MV1's first forensic interview was conducted in Spanish on November 14, 2023. MV1 said when he first met defendant he was upset about the loss of his grandmother; defendant consoled him and gave him advice. The romantic relationship began with exchanges of notes. Defendant would put notes in MV1's hand when they greeted each other.

MV1 told defendant that he was 16 and defendant, who was thirty-two at the time, acknowledged that she could get in trouble because she was older. MV1 admitted that defendant kissed him. She would lean into his room and kiss him, and they would also kiss in other locations in the facility. He denied any other physical contact and also denied speaking with defendant after he left the facility.

Minor Witness 1 (MW1) was interviewed on November 16, 2023, also in Spanish. MW1 had been roommates with MV1 and described him as a close friend. MW1 said all of the roommates became uncomfortable with the relationship between defendant and MV1. Defendant would come to their room at lights out to talk to MV1. Sometimes MV1 would leave the room after 9:30 p.m. lights out and not come back for an hour or more. But when defendant was not working on their floor, MV1 would go to bed on time.

MW1 also saw defendant lean into the dorm room and at which time defendant and MV1 kissed. Defendant told the roommates not to say anything and brought them food, which MW1 believed was a bribe. MV1 showed MW1 the note that defendant gave him, calling him "mi amor" and "papi." MW1 turned over the notes that MV1 left behind.

Minor Witness 2 (MW2) was also interviewed in Spanish on November 16, 2023. MW2 reported seeing defendant and MV1 kiss. MW2 also reported seeing defendant and MV1 go to certain locations in the facility that were out of range of the surveillance cameras. MW2 said

**Government's Trial Memorandum**                                                                                          **Page 3**

defendant would give the minors sweets and cookies to encourage them to not report the relationship. MW2 stated that defendant told MW2 that if MW2 reported the relationship between MV1 and defendant, defendant would generate reports about MW2 that would prevent MW2 from leaving Morrison. MW2 was concerned for MV1 because MV1 had said that defendant told MV1 they would reunite after MV1 left and went to Texas.

In the weeks following MV1's initial interview, an attorney in Texas contacted HHS-OIG and said that MV1 had not disclosed all of the contact with defendant. HHS-OIG interviewed MV1 a second time on April 30, 2024.

In that second interview, MV1 said that he held back information because he was scared; defendant knew where MV1 lived and he was afraid defendant would find him if he spoke about the relationship.

MV1 said that one night when he got up to use the bathroom, he met with defendant in a phone call area. Each area had a chair and a phone, and the areas were separated by curtains. MV1 sat on one of the chairs. Defendant looked around and walked over to MV1, leaned over and kissed him and touched MV1's penis over his clothes. MV1 said his arms were at his sides and the kiss and touching lasted about five seconds. He said he felt uncomfortable and got up and left.

Defendant gave MV1 her phone number and told him to call her when he was out of the program. She told MV1 that she wanted to be intimate with him. After MV1 was with his uncle, he used his uncle's phone to text and video chat with defendant. During one video call, defendant took off her clothes and faced a mirror so MV1 could see her. Defendant told MV1 to undress too. He did and showed defendant his penis. Defendant asked MV1 to masturbate on the call.

MV1 told the interviewer that when his uncle received the letter from Oregon DHS, he called defendant and told her. Defendant was worried and told MV1 to deny everything. MV1 said he blocked defendant's number after that.

MV1's uncle provided consent to search MV1's phone. There were records of four calls using What's App between defendant and MV1 between October 27th and November 3, 2023. MV1 also gave the interviewer six notes he had saved from defendant.

On May 30, 2024, Minor Witness 3 (MW3), then in custody at another Morrison facility, reported that he had observed defendant and MV1 kissing when MV3 had been roommates with MV1 in October 2023. MV3 reported that he felt very uncomfortable about what he had seen and even months later, sometimes he could not sleep at night thinking about it.

### D.    Search Warrant and Forensic Analysis

On June 18, 2024, federal agents executed a search warrant at defendant's apartment. The agents seized an iPhone 14 Pro, a damaged iPhone 12, a laptop, and an external hard drive. A forensic examiner located defendant's What's App user account on the iPhone 12 that matched the account that had been used in the calls with MV1.

The iPhone 14 Pro included MV1's name and phone number, but the number was blocked. The phone included a Facebook search of MV1's name. The phone also included the following google searches:

- Can you go to jail for kissing a minor

- Is statuory Rape Kissing

- What is punishable for kissing minor in Oregon

- Kissing a minor illegal

- How long can you go to jail for kissing a minor in Oregon

- Is kissing considered sexual contact

- Can you be charged for kissing minor in Oregon

- What can you be charged with if found guilty of kissing minor in Oregon

Investigators also obtained a search warrant for defendant's iCloud account and located an entry for MV1's name that had been created on September 16, 2023.

### E. Additional Allegations Against Defendant

Defendant worked in an on-call capacity at the Multnomah County Juvenile Detention Center at the same time she was employed at Morrison Mi Futura. In December 2023, Multnomah County put defendant on administrative leave and ultimately terminated her, citing concerns about appropriate boundaries she had displayed with teenaged detainees among its reasons. Multnomah County personnel reported seeing defendant standing in dorm room doorways for long periods of time, walking alone with a juvenile detainee, and passing notes to juvenile detainees.

## III. ELEMENTS OF THE OFFENSES

### A. Count 1 – Abusive Sexual Contact

Defendant is charged with Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(a)(4). The government must prove beyond a reasonable doubt that: (1) between on or about September 12, 2023, and October 8, 2023, defendant knowingly had sexual contact with MV1; (2) the offense was committed in a facility in which persons are held pursuant a contract or agreement with a federal agency, namely the Office of Refugee Resettlement a component of the U.S. Department of Health and Human Services (HHS); and (3) MV1 was under the

custodial, supervisory, or disciplinary authority of defendant. *See* 18 U.S.C. § 2244(a)(4) (cross-referencing 18 U.S.C. § 2243(b) but substituting "sexual contact" for "sexual act").

In this case "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, groin, inner thigh, or buttocks any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. Consent is not a defense, making any attempt to suggest that MV1 willingly engaged with defendant's sexual gestures immaterial.

"Official detention" includes a minor who is being held in a facility, who has been served with a Notice to Appear in Immigration Court, and who has been placed into removal proceedings that created the possibility of deportation. *United States v. Pacheco*, 977 F.3d 764, 766 (9th Cir. 2020).

## IV. OTHER EVIDENTIARY ISSUES

### A. Motions in Limine

The government is filing motions to admit certain evidence under Rules 404(b), and to exclude evidence under Rule 412.

### B. Expert Testimony

The government plans to call Christopher Lamar Jones, Sr., Digital Investigator, Department of Health and Human Service Office of the Inspector General. His curricula vitae have been provided to the defense. In compliance with Federal Rule of Criminal Procedure Rule 16, the government filed a separate expert witness disclosure for Mr. Jones. (ECF 56).

The government also intends to call Forensic Document Examiner Brett Bishop. His curricula vitae have been provided to the defense. In compliance with Fed.R.Crim. P. 16, the government is filing a separate expert witness disclosure for Mr. Bishop.

### C. Non-Hearsay and Admissible Hearsay

The government anticipates Morrison Mi Futuro Medical Coordinator Ali Banta will testify about how she learned of defendant's misconduct. The statements by the minor ward witnesses will not being offered for their truth but instead for effect on the listener, namely why Banta submitted her incident report, initiating the investigation.

The government will admit evidence of defendant's statements to juveniles MV1, MW1, MW2, and MW3, defendant's text messages to coworker, and defendant's written notes to MV1. These statements were made in person, over the phone, in writing or via text message. They are admissible for their truth as statements by a party opponent. Fed. R. Evid. 801(d)(2)(A). Responses to defendant are admissible because "statements providing context for other admissible statements are not hearsay because they are not offered for their truth." *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006); *see also United States v. Louis*, 233 Fed. App'x. 933, 935 (11th Cir. 2007) (affirming that statements offered to give context to the defendant's statements were not offered for their truth and therefore did not fall within the ambit of the Confrontation Clause); *United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009) (it is "well-settled" that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay and do not present a Confrontation Clause issue); *United States v. Detelich*, 351 Fed. Appx. 616, 623 (3rd Cir. 2009).

The government intends to offer evidence of defendant's contact with juvenile males at Multnomah County Juvenile Detention Center Rule 404(b). Rule 404 disallows evidence of a person's character or prior acts to prove that she acted in conformity with that propensity on the charged occasion. Fed. R. Evid. 404(a)(1), (b)(1). But a defendant's past behavior is admissible if it provides relevant information about the alleged crime—such as "motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The government will propose a limiting instruction as further mitigation. *See United States v. Romero*, 282 F.3d 683, 688 n.1 (9th Cir. 2002) (noting efficacy of limiting instruction in mitigating prejudice).

## V.     STIPULATIONS

The government will continue to communicate with defense counsel regarding stipulations to streamline the presentation of evidence in this case.

## VI.    THE TRIAL

### A.     Witnesses and Exhibits

The government plans to call twelve to fourteen witnesses, depending on availability and stipulations. Anticipated witnesses include MV1, MW1, MW2, MW3, and staff from Morrison Mi Futuro. The government will call HHS-OIG Special Agent Jessica Knight and Digital Investigator Christopher Smith, Sr.  Additional HHS-OIG inspectors may be unnecessary depending on whether the defense stipulates to chain of custody and other evidentiary foundations.  The government also plans to call two to four Multnomah County employees regarding defendant's employment at the Multnomah County Juvenile Detention Center. The government anticipates at least two witnesses will require the assistance of Spanish translation services and the government is securing a Court Certified Interpreter to assist.

The government anticipates introducing approximately 55 exhibits. The government will offer video footage and stills from Morrison Mi Futuro surveillance cameras, as well as evidence from two different iPhones seized from defendant  in this case.  The government will also offer the notes provided by MV1 and MW1. The government may offer handwriting samples from defendant in the form of lease and employment applications. The government has conferred with

defense counsel in an effort to identify objections to exhibits in advance of trial. The parties will continue conferring through the pretrial conference.

## VII.    CONCLUSION

The government is prepared to proceed to trial on January 13, 2026.

Dated: December 16, 2025.                         Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Pamela Paaso*
PAMELA PAASO, TXSB #24060371
Assistant United States Attorney

*/s/ Kate A. Rochat*
KATE A. ROCHAT, OSB #184324
Assistant United States Attorney