SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAMELA PAASO, TXSB# 24060371**
Pamela.Paaso@usdoj.gov
**KATE A. ROCHAT, OSB #184324**
Kate.Rochat@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00265-AB** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **TERESA VALDOVINOS-GODINEZ,** | |
| **Defendant.** | |

**Introduction**

Defendant Teresa Valdovinos-Godinez sexually abused a 16-year-old resident of the Refugee Resettlement youth facility where she worked as a counselor. The government recommends imposition of a sentence of 12 months' imprisonment, a one-year term of supervised release, and a $100 special assessment.

/ / /

/ / /

/ / /

**Government's Sentencing Memorandum**                                                       **Page 1**

**Factual Background**

**A.      The Offense Conduct**

In August of 2024, Minor Victim 1 (MV1), was placed in the custody of the Office of Refugee Resettlement at Morrison Mi Futuro, a residential facility for unaccompanied minors in Portland, Oregon. Defendant was working as a relief milieu counselor at that facility and had close contact with the detained minors. In that role, defendant was responsible for directing the minors through scheduled activities, accompanying them during outings and assisting them throughout their time at Morrison. Defendant was also responsible for completing internal incident reports and shift summaries that could be used for disciplinary or corrective actions.

In mid-October 2024, MV1 was placed with a relative in Texas. Several days after MV1 left Morrison Mi Futuro, four minors in the program approached a staff member with concerns for MV1. The children reported that MV1 and defendant were in a romantic relationship, and they were worried that defendant had followed MV1 to Texas. One of the minors reported delivering notes between the MV1 and defendant. Another, who shared a room with MV1, said they saw defendant and MV1 kiss in the dorm room. The minors said that defendant and MV1 met in locations at the facility that did not have cameras. Some of the minors stated they did not report the relationship because defendant threatened them with deportation. One of the minors turned over notes that they said defendant wrote to MV1.

In a forensic interview in November of 2023, MV1 admitted to kissing and exchanging notes with defendant, but denied any other physical contact. In a subsequent forensic interview, MV1 said that he had initially held back information because he was scared; defendant knew where MV1 lived and he was afraid defendant would find him if he spoke about the relationship.

**Government's Sentencing Memorandum**                                          **Page 2**

MV1 went on to describe an incident in which Valdovinos approached MV1 while MV1 was seated. Valdovinos leaned over and kissed MV1 and touched MV1's penis over his clothes. MV1 said his arms were at his sides and the kiss and touching lasted about five seconds.

MV1 also reported that defendant gave MV1 her phone number and told him to call her when he was out of the program. She told MV1 that she wanted to be intimate with him. After MV1 was with his uncle, he used his uncle's phone to text and video chat with defendant. During one video call, defendant took off her clothes and faced a mirror so MV1 could see her. Defendant told MV1 to undress too. He did and showed defendant his penis.

Defendant gave MV1 her phone number and told him to call her when he was out of the program. She told MV1 that she wanted to be intimate with him. After MV1 was with his uncle, he used his uncle's phone to text and video chat with defendant. During one video call, defendant took off her clothes and faced a mirror so MV1 could see her. Defendant told MV1 to undress too. He did and showed defendant his penis. Defendant asked MV1 to masturbate on the call.

When MV1 learned about the investigation into defendant's conduct, he called defendant and told her. MV1 described defendant as worried and said defendant told MV1 to deny everything. MV1 said he blocked defendant's number after that. A search of MV1's phone indicated four calls using What's App between defendant and MV1 between October 27th and November 3, 2023. A review of defendant's iCloud account revealed an entry for MV1's name that had been created on September 16, 2023.

B.    The Charges

Defendant was charged with abusive sexual contact in violation of 18 U.S.C. § 2244(a)(4) in a superseding indictment.

/ / /

**Government's Sentencing Memorandum**                                    **Page 3**

C.       The Plea Agreement & Guideline Computations

On January 8, 2026, defendant entered a guilty plea. Pursuant to the plea agreement, the government recommends that defendant receive a two-level reduction for acceptance of responsibility. The government further recommends an additional one-level reduction to reach an adjusted guideline level of 11. The parties did not include a two-level enhancement for use of a computer pursuant to USSG § 2A3.4(b)(5).

**Government's Recommended Sentence**

Defendant, twice the age of MV1, took advantage of her position as well as MV1's youth and relative isolation. MV1 reported being afraid to disclose the abuse. Defendant's betrayal of trust extended to the other minors at Morrison Mi Futuro who expressed concern for their friend. While defendant has no prior criminal history, she has been reprimanded previously for failing to maintain appropriate boundaries with minor teenage males she supervised.

Defendant willfully exploited her position at the expense of a vulnerable teenager. Her actions occurred in a residential setting with other adults close by, and in some instances in plain sight of other minors. It is indeed a rare case when someone convicted of a hands-on offense serves no time in custody. The government is not convinced that this is that rare case.

A sentence of twelve-months is sufficient but not more than necessary to reflect the seriousness of defendant's conduct and deter more of the same going forward. The government supports the conditions recommended in the presentence report.

**Victim Impact and Restitution**

The government has not received any victim impact statements (VIS); however, the government anticipates that MV1 may choose to provide a statement at sentencing. If the government receives any VIS prior to sentencing, copies will be provided to the Court and

**Government's Sentencing Memorandum**                                    **Page 4**

defense upon receipt to fulfill its statutory obligations under the Crime Victims' Rights Act.  *See* 18 U.S.C. § 3771(a)(4) (providing that victims shall have the "right to be reasonably heard at any public proceeding in the district court involving release, plea, [or] sentencing"); 18 U.S.C. § 3771(c)(1) ("Officers and employees of the Department of Justice . . . shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in [18 U.S.C. § 3771(a)]").  Any VIS will be presented on behalf of the victim.

The government has not received any specific restitution requests as of this date.

**Conclusion**

Based on the foregoing, the government recommends that this Court impose a sentence of 12 months, followed by a one-year term of supervised release, subject to the mandatory, standard and special conditions, and a special assessment in the amount of $100.

Dated: March 25, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney


*/s/ Pamela Paaso*
PAMELA PAASO, TXSB #24060371
Assistant United States Attorney

*/s/ Kate A. Rochat*
KATE A. ROCHAT, OSB #184324
Assistant United States Attorney

**Government's Sentencing Memorandum**                    **Page 5**